IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RAYMOND CAZARES,             §
    *Petitioner*,              §
                    §
v.                          §      CIVIL ACTION NO. H-09-0484
                    §
RICK THALER,                §
    *Respondent.*             §

## MEMORANDUM OPINION AND ORDER

Raymond Cazares, a state inmate represented by counsel, seeks habeas relief under 28 U.S.C. § 2254, challenging his state murder conviction. Respondent filed a motion for summary judgment (Docket Entry No. 10), to which petitioner filed a response (Docket Entry No. 11).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

## I.  PROCEDURAL BACKGROUND

Petitioner was convicted of murder in 2004 and sentenced to eighty years' imprisonment. The conviction was affirmed on appeal. *Cazares v. State*, No. 01-04-01067-CR, 2006 WL 1275567 (Tex. App. – Houston [1st Dist.] 2006, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused discretionary review, and denied

petitioner's application for state habeas relief without a written order. *Ex parte Cazares*, No.

71,207-01.

Petitioner complains in the instant petition that trial counsel was ineffective in the

following four particulars:

1.      failing to object to petitioner's post-arrest statement;

2.      failing to object to victim-impact testimony and argument;

3.      failing to object to the State's argument regarding parole law; and

4.      failing to request a special issue on "sudden passion."

Respondent argues that these claims are without merit and should be denied.

## II.  FACTUAL BACKGROUND

The state appellate court made the following statement of facts in its opinion:

On the night of November 5, 2003, appellant, his girlfriend, Maritza Urbina, and two other friends arrived at an apartment complex where Maritza's sister Laritza and mother, Elizabeth Diaz, lived. Laritza testified that November 5, 2003, was her birthday and that, shortly after Maritza and appellant arrived, her boyfriend Perez came over to give her a birthday gift. Laritza testified that she was concerned when Perez arrived, because she knew that he did not like appellant.

Perez testified that, upon seeing appellant and his friends in the parking lot, he decided to leave. Perez walked away from the group, called his cousin, Sergio Lopez, and asked Lopez to come and pick him up from the apartment complex. Perez testified that he saw Lopez drive up, get out of his car, and exchange words with one of appellant's friends, 'Tony.' Perez testified that, after some heated words were exchanged, Lopez punched Tony in the face. A fist fight ensued between the two men. Perez testified that, while the men were fighting, he saw appellant pull out a gun. Appellant first pointed the gun at

Perez and then at Lopez before shooting two or three times.   After the shooting, appellant fled the scene.

Elizabeth Diaz, Maritza and Laritza Urbina's mother, testified that she saw appellant point the gun at Lopez and shoot three times from a distance of 'a few feet.'   According to Diaz, after Lopez fell to the ground, appellant screamed out, 'Ah, you got what was coming to you.   You thought I was bullshitting,' and he ran off.

Appellant testified that he shot in the direction of Lopez to scare him away so that he would not hurt Tony.   Appellant admitted that he fled after he shot the gun and explained that he ran because he was scared.   He ran out of the parking lot and toward a McDonald's restaurant near the apartment complex. While running to the restaurant, appellant testified that he threw the gun over a fence and into the parking lot of another apartment complex.   Appellant then called his parents from a payphone near the restaurant and asked them to come pick him up.   He went into the bathroom at the restaurant to wait for his parents.   Appellant testified that he was only in the bathroom for about five minutes before the police came in to arrest him.

The jury found appellant guilty of murder and assessed punishment at 80 years' confinement.

*Cazares*, at*1.

The trial court on collateral review also made a short statement of facts, as follows:

The Court finds that the State elicited evidence at guilt/innocence that, on the evening of November 5, 2003, the applicant and his girlfriend, Maritza Urbina, attended a birthday celebration at the home of Maritza's mother, Elizabeth Diaz; that the applicant and his friends were drinking and taking Xanax; that the applicant's friend, Tony Montez, became involved in a fight with the complainant; that the applicant was standing about six feet from the fight when he pulled his gun, pointed it at another party guest, Gabriel Perez, and asked Perez whether he wanted to die; that the applicant then pointed his gun at the complainant who was no longer fighting with Montez, shot the complainant, and yelled, 'Ah, you got what was coming to you.   You thought I was bullshitting'; that the applicant fled from the scene with girlfriend Maritza towards a nearby bayou; that the applicant discharged the gun a few times and

3

then threw it into the bayou; that the applicant and Maritza went to a fast food restaurant where the applicant telephoned his parents and admitted that he just killed someone; and, that the police then arrested the applicant at the fast food restaurant.

*Ex parte Cazares*, pp. 96-97 (record citations omitted).

## III.  THE APPLICABLE LEGAL STANDARDS

A.    Habeas Review

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

B.     Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner propounds the following four instances of ineffective assistance of trial counsel, each of which is addressed separately.

A.    Failure to Object to Petitioner's Post-Arrest Statement

During the punishment phase of trial, the State presented evidence showing that petitioner had given false information to police during their investigation of an unrelated incident on October 28, 2003. On that date, Maritza Urbina's mother had summonsed the police to her home after friends informed her that Maritza had been assaulted. When Maritza and petitioner returned to the house during the investigation, Maritza had a black eye. R.R., Vol. 6, pp. 10-12. Petitioner first told the investigating officers that he did not know what had happened to her. He later told them that she had been fighting with another girl in the park, but he was unable to describe the girl or identify the park. As the police officers continued to question him, petitioner became agitated, pushed away one of the officers, and attempted to leave. *Id.*, p. 14. The officers stopped him and placed him under arrest for resisting detention. *Id.*, pp. 16-17.

After he was arrested and taken to jail, petitioner told officers that he had pushed Maritza off the bed while they were playing, and that she struck her head. *Id.*, p. 14. Petitioner alleges that he made this statement without the benefit of his constitutionally-mandated warning under *Miranda v Arizona*, 384 U.S. 436 (1966). He asserts that, because he admitted he "injured" Maritza in his post-arrest statement, use of the statement at trial violated *Miranda* and article 38.22, section 3 of the Texas Code of Criminal Procedure.[1]

---

[1] Section 3 of article 38.22 sets forth the requirements to make oral custodial statements admissible at trial and, among other things, codifies the *Miranda* warnings required to be given prior to custodial confessions. TEX. CODE CRIM. PROC. art. 38.22, § 3(a).

8

The trial record reveals the following relevant exchange between Officer Eilers and the prosecution during the punishment phase of trial:

Q:    Now, Officer, during the course of your investigation, when you first arrived on the scene, [petitioner] wasn't under arrest, was he?

A:    No, ma'am.

Q:    Did you have an opportunity to ask [petitioner] what happened to his girlfriend, Maritza?

A:    Yes, ma'am. I did.

Q:    Okay.  What did he say?

A:    First he said he didn't know what had happened to her, I believe, is what he told me.

Q:    Okay.

A:    He didn't –

Q:    Go ahead.

A:    He said he didn't know how she got injured.

Q:    Okay.  At some point did he then give you an account of what he thought might have happened?

A:    Right.  He later changed his story.  He stated that she had been in a fight with a girl at the park, he couldn't give any names as to what park or what girl.

Q:    Was he able to name the female?

A:    No.

Q:    Was he able to describe the female?

A:     No, he couldn't give any details.

Q:     Okay.  So, what happened after you began to inquire about additional details about who this girl was that beat up his girlfriend?

A:     He became defensive and obviously agitated and turned around and started to leave.

Q:     Okay.  Now, at some point after he came up with this story about the girl, did he later tell you that he had been involved?

A:     Yes, ma'am.  After he said –

Q:     What did he say?

A:     After he had been arrested, taken to jail, he then stated, yes, they had been playing on the bed, he pushed her off of the bed, she hit her head on the box springs that she fell off.

R.R., Vol. 6, p. 14.  Petitioner contends that, because he made this inculpatory post-arrest statement without benefit of *Miranda* warnings, it was inadmissable and counsel should have objected.

In his affidavit submitted on collateral review, trial counsel testified as follows:

Officer Eilers testified that he was dispatched to [petitioner's] home after Elizabeth Diaz asked the police to check on the welfare of her daughter, Maritza Urbina, whom she heard had been assaulted.  [Petitioner] initially told Eilers that he did not know what happened to Maritza.  After [petitioner] was arrested, he said that he had pushed Maritza. . . . I did not object that Eilers's testimony regarding [petitioner's] post-arrest oral statement was inadmissible under *Miranda v. Arizona* and [state law].  These objections did not occur to me at the time.

*Ex parte Cazares*, p. 43.

In denying petitioner's claim on collateral review, the trial court made the following relevant findings:

14.   The Court finds that the applicant urges habeas relief based upon trial counsel's failure to object to Officer Eilers's punishment testimony concerning the applicant's post-arrest oral statement that he 'injured' Maritza Urbina.

15.   The Court finds that the applicant's characterization of [his] post-arrest oral statement as a statement that the applicant 'injured' Maritza Urbina is an inaccurate characterization of the actual testimony elicited at trial.

16.   The Court finds that Officer Eilers testified for the State at punishment that, after the applicant was arrested for resisting arrest, the applicant gave a statement asserting that Maritza Urbina hurt herself while she and the applicant were playing.

17.   The Court further finds that trial counsel elicited testimony on cross-examination of Officer Eilers that the applicant gave police three statements but never confessed to striking Maritza; that the only charge filed against the applicant was for the misdemeanor offense of resisting arrest; and, that the applicant was not charged with an offense naming Maritza as the complainant.

18.   The Court finds that trial counsel Greenlee states in his habeas affidavit that it did not occur to him to object to Officer Eilers's complained-of-testimony on the basis that it was inadmissible under *Miranda v. Arizona* and [state law].

19.   Notwithstanding the habeas assertion of trial counsel, the Court finds that it would have been reasonable trial strategy for counsel not to object to the complained-of testimony of Officer Eilers because, absent such testimony, the jury could have concluded that the applicant hit Maritza Urbina. For the same reason, the Court finds that the applicant was not prejudiced based on the admission of the complained-of testimony.

*Ex parte Cazares*, pp. 99-100 (record references and citations omitted).

11

Based on these findings, the trial court concluded as follows:

1.    The applicant fails to demonstrate deficient performance, much less harm, with respect to claims that trial counsel was ineffective in the following areas: . . . failure to object to testimony of the applicant's post-arrest statement[.]

\*     \*     \*     \*

4.    Because it would have been reasonable trial strategy for counsel to elect not to object to Officer Eilers's testimony concerning the applicant's post-arrest statement, and the applicant was not harmed by the admission of such statement, the applicant fails to demonstrate that he is entitled to relief under *Strickland*.

5.    Additionally, because the applicant fails to demonstrate that his post-arrest statement was obtained in violation of *Miranda* and [state law], the applicant cannot demonstrate that trial counsel was ineffective for failing to object on such basis.

*Id.*, pp. 108-109 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner fails to establish that the complained-of statement was inadmissible absent *Miranda* warnings or that it violated article 38.22, section 3 of the Texas Code of Criminal Procedure.  Although petitioner argued that he admitted in his post-arrest statement to injuring Maritza, the trial court disagreed and found that petitioner's argument was "an inaccurate characterization of the actual testimony elicited at trial." *Ex parte Cazares*, p. 99.  The trial court found that, in his post-arrest statement, petitioner "assert[ed] that Maritza Urbina hurt herself while she and the applicant were playing." *Id.*  The trial court observed that petitioner did not confess to striking Maritza and he was not charged with assaulting

Maritza. *Id.* The trial court's finding is supported by the record in that Officer Eilers agreed

on cross-examination that petitioner had said, "They were playing and she fell off the bed."

R.R., Vol. 6, p. 18. This Court's independent review of the record reveals no evidence that

petitioner admitted to injuring Maritza, or that he made any criminally inculpatory statements

regarding Maritza's black eye.

Regardless, the trial court found that it would have been reasonable trial strategy for

trial counsel not to object to the post-arrest statement, "because, absent such testimony, the

jury could have concluded that [petitioner] hit Maritza Urbina." An independent review of

the record leads this Court to agree.  Although petitioner's two pre-arrest versions of

Maritza's injury may have constituted misinformation, they also may have caused the jury

to question whether petitioner was attempting to hide his own criminal actions.  Without

petitioner's third, post-arrest statement, the jury was left with petitioner's two conflicting pre-

arrest statements asserting that he did not know what happened, and that Maritza had been

in a fight with an individual he was unable to describe at a location he could not identify.

The addition of petitioner's post-arrest statement – that she had struck her head when he

pushed her off the bed while they were playing – gave the jury a reasonable explanation for

Maritza's black eye without implicating petitioner in criminal wrong-doing.  Consequently,

trial counsel was not deficient in not objecting to evidence of the post-arrest statement. Even

assuming counsel were deficient, petitioner fails to show that, but for counsel's failure to

object, there is a reasonable probability that he would have received a significantly less harsh

sentence. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).

The state habeas court denied relief on this issue.  Petitioner fails to show that the state

court's determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record.  No

basis for habeas relief is shown, and respondent is entitled to summary judgment.

B.    Failure to Object to Victim-Impact Evidence

Petitioner next complains that trial counsel was ineffective in failing to object to

alleged victim-impact testimony during the guilt-innocence phase of trial.  Specifically,

petitioner asserts that counsel failed to object to Elizabeth Diaz's testimony that her three-

year-old daughter witnessed the shooting and now becomes upset when viewing shootings

on television.

In his affidavit submitted on collateral review, trial counsel testified as follows:

> I did not object to Elizabeth Diaz's testimony at the guilt-innocence stage that
> her three-year-old daughter saw the shooting and now shakes whenever she
> sees someone shot on television. . . . It did not occur to me at the time that
> victim-impact testimony is never admissible at the guilt-innocence stage[.]

*Ex parte Cazares*, pp. 43-44.

In denying petitioner's claim on collateral review, the trial court made the following

relevant findings:

21.     The Court finds that the applicant urges habeas relief, contending that
        trial counsel was ineffective for failing to object to alleged victim-
        impact testimony elicited at guilt/innocence.

                                *    *    *    *

23.     The Court finds that Elizabeth Diaz testified at guilt/innocence that
        three-year-old Brianna, a bystander to the instant shooting, had a latent
        reaction to witnessing the instant offense in that she started shaking
        whenever she saw someone shot on television.

                                *    *    *    *

28.     The Court finds that trial counsel Greenlee states in his habeas affidavit
        that he did not object to the complained-of testimony of Elizabeth Diaz,
        and '[i]t did not occur to [him] at the time that victim-impact testimony
        is never admissible at the guilt-innocence stage[.]'

29.     Notwithstanding trial counsel's affidavit, the Court finds that the
        applicant mischaracterizes Diaz's testimony regarding the effect on her
        daughter of witnessing the instant offense as victim-impact evidence;
        that the complained-of testimony did not reveal anything about the
        complainant's good-character or how third persons were affected by the
        death of the complainant.

*Ex parte Cazares*, pp. 100-103 (record references and citations omitted).

Based on these findings, the trial court concluded that:

1.      The applicant fails to demonstrate deficient performance, much less
        harm, with respect to claims that trial counsel was ineffective in the
        following areas: . . . failure to object to the alleged victim-impact
        testimony[.]

                                *    *    *    *

6.      Because the complained-of testimony of Elizabeth Diaz was not victim-
        impact evidence, the applicant's ground for relief alleging that trial
        counsel was ineffective for failing to object on such basis fails.

*Ex parte Cazares*, pp. 108-109 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

The trial court found that, under state law, the complained-of testimony did not constitute victim-impact evidence because the testimony did not reveal anything about the complainant's good character or how third persons were affected by the death of the complainant.  Although petitioner contends that the trial court's interpretation of state law was erroneous, it is not this Court's function on federal habeas review to reconsider a state court's interpretation of state law.  *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Thus, this Court is bound by the trial court's determination that the complained-of testimony did not constitute victim-impact evidence under state law.

Because Diaz's testimony was not victim-impact evidence under state law, trial counsel was not deficient in failing to object to the testimony on that basis.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that counsel is not ineffective in failing to make futile or meritless objections or motions).

The state habeas court denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

C.    Failure to Object to Parole Law Arguments

Petitioner asserts that counsel failed to object to the State's references to parole law during closing argument at punishment.  Specifically, petitioner contends that counsel should have objected when the prosecutor told the jury, "Whether or not you want to consider the parole law, that's up to you," and, "When he gets out, he won't be young anymore, but he'll still have a life ahead of him."

In his affidavit submitted on collateral review, trial counsel testified, in relevant part, as follows:

> The prosecutor also argued during summation, 'Whether or not you want to consider the parole law, that's up to you,' but when Cazares 'gets out, he won't be young anymore, but he'll still have a life ahead of him.'  I did not object to the argument on the ground that it was contrary to the court's charge that the jury not consider the manner in which the parole law may be applied to Cazares.  In retrospect, I should have objected.

*Ex parte Cazares*, pp. 44-45.

In denying petitioner's claim on collateral review, the trial court made the following relevant findings:

32.    The Court finds that the applicant contends that he is entitled to habeas relied because trial counsel failed to object to the State's punishment argument regarding parole.

33.    The Court finds that the range of punishment in the instant cause was five years to ninety-nine years or life imprisonment, and the applicant was eligible for probation.

34.    The Court finds that the trial court included the following instructions on parole in its punishment charge:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

35. The Court finds that the State argued the following at punishment:

> And when you go back there, I ask you to ask yourselves one good reason why Sergio Lopez's life is not worth Raymond Cazares's life in prison. If you can come up with one good reason, then you should give him less than life in prison. And the reason should not be, I've never been convicted of a felony, because, like I said, he started big and he started as soon as he could when he murdered Sergio Lopez. And the reason should not be because he is young, because as you will see from the charge, you will be able to see the parole law, which is contained within there. It will tell you, eligible for parole within 30 years. *Whether or not you want to consider the parole law, that's up to you,* but that's what it will tell you.
>
> *When he gets out, he won't be young anymore, but he'll still have a life ahead of him.*

36. The Court finds that the jury sent a note to the court during punishment deliberations requesting a clarification of the difference between a

ninety-nine year and life sentence; accordingly, it is reasonable to conclude that the jury considered the maximum punishment in this case.

37.     The Court finds that trial counsel Greenlee states in his habeas affidavit that he should have objected to the complained-of argument 'on the ground that it was contrary to the court's charge that the jury not consider the manner in which the parole law may be applied to [the applicant].'

38.     The Court finds that the prosecutor in the instant case did not actually engage in an application of the parole law to the applicant's potential sentence during punishment argument.

39.     The Court finds that the applicant fails to demonstrate that the jury was confused or that the jury considered parole law in determining the applicant's punishment.

40.     The Court finds that the applicant fails to demonstrate harm stemming from the complained-of argument based on the egregious nature of the instant offense, the jury's rejection of a lesser offense conviction or probation, and the jury's assessment of a punishment less than the maximum.

*Ex parte Cazares*, pp. 103-105 (record references and citations omitted; original emphasis).

Based on these findings, the trial court concluded as follows:

1.     The applicant fails to demonstrate deficient performance, much less harm, with respect to claims that trial counsel was ineffective in the following areas: . . . failure to object to the State's punishment argument on parole[.]

\*     \*     \*     \*

9.     Additionally, because the prosecutor's argument was proper as a paraphrasing of the court's jury charge on parole, the applicant cannot demonstrate that he is entitled to habeas relief.

10.   Additionally, because the Court of Criminal Appeals is not bound by the immediate appellate court cases cited by the applicant, and such cases are factually distinguishable from the instant case, the applicant's ineffective[ness] claim is meritless.

11.   Additionally, because the court charged the jury not to consider how the laws concerning parole applied to the applicant, and it is presumed that a jury follows the trial court instructions, the applicant cannot demonstrate prejudice under *Strickland*.

12.   Additionally, because the applicant fails to demonstrate harm based on the alleged improper argument, the applicant's ineffective[ness] claim is meritless.

*Id.*, pp. 108-110 (case citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

As shown by these findings, the trial court determined that, during closing argument, the prosecutor "did not actually engage in an application of the parole law to the applicant's potential sentence." Petitioner argues that this interpretation of state law was incorrect; again, it is not the function of this Court under section 2254 to review a state court's interpretation of state law.

The trial court found that, under state law, the prosecution's two comments at closing argument were not improper references to parole law. Thus, trial counsel's failure to object to the two comments on such grounds did not constitute ineffective assistance of counsel. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that counsel is not ineffective in failing to make futile or meritless objections or motions).

20

The state habeas court denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

D.    Failure to Request "Sudden Passion" Instruction

Petitioner claims that trial counsel should have requested a "sudden passion" special issue that would have reduced the sentencing range on his murder conviction.

In his affidavit submitted on collateral review, trial counsel testified as follows:

> I did not request that the court submit a special issue at the punishment stage asking whether Cazares shot the deceased under the immediate influence of a sudden passion arising from an adequate ca[u]se.  Had Cazares shot and killed Gabriel Perez, who was attacking him, I would have requested this instruction.  However, I did not think Cazares was entitled to the instruction because he shot Sergio Lopez, who was attacking his friend.

*Ex parte Cazares*, p. 45.

In denying petitioner's claim on collateral review, the trial court made the following relevant findings:

> 47.    The Court finds that the applicant urges habeas relief because trial counsel did not request a sudden passion special instruction based on alleged trial testimony that the complainant started a fight with the applicant's friend, Tony Montez, and was winning the fight when the applicant fired three shots in an effort to stop the complainant from hitting Montez.

48.     The Court finds that trial counsel Greenlee states in his habeas affidavit that he did not request that the court submit a special issue at punishment on sudden passion because he did not think that the applicant was entitled to such instruction.

49.     The Court finds that, before a defendant is entitled to a sudden passion instruction, he must prove adequate cause for his passion, and adequate cause is that which 'would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.'

50.     The Court finds that the event that allegedly caused the applicant to discharge his gun was the fight between the complainant and the applicant's friend; however, there is no evidence that the provocation by the complainant was directed at the applicant, or that the applicant was directly threatened by the fight.

51.     The Court finds that the applicant had time to deliberate before discharging his gun because the applicant secured the gun some time after arriving at the birthday celebration and before the shooting; the applicant drew the gun when he saw Perez walking towards him, pointed his gun at Perez, told Perez to step back, and held the gun on Perez for a few seconds; and, the applicant then looked to where the complainant and the applicant's friend were fighting and fired in that direction.

*Ex parte Cazares*, pp. 106-108 (record references and citations omitted).

Based on these findings, the trial court concluded as follows:

1.      The applicant fails to demonstrate deficient performance, much less harm, with respect to claims that trial counsel was ineffective in the following areas: . . . failure to request a sudden passion special issue[.]

                         *    *    *    *

15.     Because the applicant failed to demonstrate adequate cause for his alleged sudden passion, the applicant is not entitled to a sudden passion special issue; accordingly, the applicant's habeas claim fails.

16.    Additionally, the event allegedly causing the applicant to fire his weapon did not directly involve the applicant, and the applicant had time to deliberate before the instant shooting; accordingly, he was not entitled to the special instruction on sudden passion.

*Id.*, pp. 108-111 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

The question of whether petitioner was entitled to a "sudden passion" special issue was resolved against him by the trial court on collateral review.  Applying state law to the relevant facts, the trial court determined that petitioner "failed to demonstrate adequate cause for his alleged sudden passion" because he had not been attacked and because he had sufficient time to deliberate his actions.  *Ex parte Cazares*, pp. 107-108, 110-111.  As previously noted, this Court may not reconsider the trial court's interpretation of state law. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Thus, this Court is bound by the trial court's determination that petitioner was not entitled to a "sudden passion" special issue under state law.[2]

Because petitioner was not entitled to the special issue under state law, trial counsel was not deficient in failing to request it.  *See Koch v. Puckett*,  907 F.2d 524, 527 (5th Cir. 1990) (holding that counsel is not ineffective in failing to make futile or meritless objections or motions).

_____

[2]Petitioner concedes in his response that this Court is bound by Fifth Circuit precedent prohibiting reconsideration of the trial court's interpretation of state law. (Docket Entry No. 11, p. 6.)  The Court declines petitioner's invitation that it carve out an exception for his case.

The state habeas courts denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## V.  CONCLUSION

The motion for summary judgment (Docket Entry No. 10) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on this the 14th day of September, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE